## Bon v. The Railway Passenger Assurance Co.

1. **Insurance:** ACCIDENT POLICY: RECOVERY ON. Under the provisions of a policy insuring the holder against accidents while traveling on the conveyances of any common carrier, provided he complied with the rules and regulations of such carrier and exercised due diligence for self protection, it was held that a passenger on a railway car, who was injured by being thrown from the steps of the car, where he stood while the train was approaching a station, in violation of a known rule of the company, was not entitled to recover.

### *Appeal from Wapello Circuit Court.*

### THURSDAY, OCTOBER 20.

THIS action is based upon an accident insurance ticket. There was a verdict and judgment for the plaintiff. The defendant appeals.

*Stiles & Lathrop*, for appellant.

*Wm. McNett* and *H. B. Hendershott*, for appellee.

ROTHROCK, J.—The plaintiff purchased an accident insurance ticket of an agent of the defendant to go from Creston to Afton, Iowa, a distance of ten miles. Before the station at Afton was reached, and while the train was yet in motion, the plaintiff left his seat in the car in which he was riding, went upon the platform and took a position on the step, from which he was precipitated to the ground before reaching the passenger platform, and one of his feet was so injured, by being crushed by a wheel of one of the cars composing the train, as to require amputation. The action was brought to recover for loss of time at $15 per week for twenty-six weeks, according to the terms of the insurance ticket. The accident policy or ticket contained the following clause: "Provided always that this insurance shall only extend to bodily injuries, fatal or non-fatal, as aforesaid, when accidentally received by the insured

while actually riding on a public conveyance provided by common carriers for the transportation of passengers in the United States or Dominion of Canada, and in compliance with all rules and regulations of such carriers and not neglecting to use due diligence for self protection." * * *
It must be conceded that it was incumbent on the plaintiff, in order to recover, to prove not only that he was accidentally injured while on his journey, but that he was at the time of the accident complying with the rules and regulations of the railroad company, and not neglecting to use due diligence for self protection. The Circuit Court instructed the jury to this effect, and no question is made as to the correctness of these instructions.

When the plaintiff rested his case the defendant moved the court to instruct the jury to return a verdict for the defendant upon the plaintiff's evidence. The motion was overruled and this ruling is assigned as error. To determine whether this motion should have been sustained, it will be necessary to give the substance of the evidence as introduced by the plaintiff up to the time the motion was made, and finally ruled upon. It appears from the evidence that as the train approached the station the whistle sounded and a brakeman called the name of the station. The train began to slow down and the plaintiff, seeing other passengers get up and walk out, arose from his seat, about five seats back in the car, and followed them out of the door upon the platform to get off. The steps of that car being occupied by a passenger, plaintiff stepped across upon the platform of the forward car, and stood upon the steps with his hands holding the railing preparatory to stepping off, and was followed upon that platform by another passenger. At this time the train had slowed down, as plaintiff says, to about two and a-half miles per hour, and as other of his witnesses say to from two to five miles per hour, when without warning the train gave a sudden start forward, whereupon the man in the rear of the plaintiff lost his balance, and falling against the plaintiff pre-

cipitated him from the steps, and in his fall his foot got under the wheel and was crushed. He fell at a point about twenty feet before reaching the passenger platform.

The foregoing is the statement of the evidence for the plaintiff as made by his counsel in argument, and in nearly the same language. That it is as favorable for the plaintiff as is justified by the record must be conceded. To this should be added the further fact that on the doors of the passenger coaches the following rule was inscribed upon a metallic plate: "Passengers are not allowed to stand on the platform." And the plaintiff himself as a witness on the stand testified that he was aware of this rule of the railroad company.

Conceding the foregoing statement of facts to be true was there such a failure of proof from the plaintiff's own showing as to require the court to direct the jury to return a verdict for the defendant? It will be observed that the rules of the company forbid passengers from standing on the platform. In its literal sense this would require them not to stand there whether the train was at rest or in motion, and it seems to us to be a reasonable requirement at all times. The platform of a car is a narrow passage for ingress and egress, and if crowded even while standing at a station it is an annoyance and inconvenience to those desiring to enter or leave the car. But in this case the train was in motion when the plaintiff went upon the platform. It is true the rule must receive a reasonable construction, and even while the train is in motion persons may rightfully pass from one car to another for proper purposes, such as going to and from a dining, smoking, or sleeping car, and the like. They are invited to do so by the agents and servants of the company, and by the manner in which trains are made up. But in so doing there would be no violation of the rule. The passenger in such cases does not *stand* upon the platform. The plaintiff's case is wholly different. He went upon the platform while the train was in motion, and some time before it arrived at

the regular stopping place. He stood with his feet upon the steps, which must be regarded as part of the platform, and holding the railing by his hands he awaited either the slowing up of the train or its arrival at the passenger platform, that he might alight. While in this position he received his injury. We think by his own statement that the accident happened while he was in plain violation of the rule under consideration, and because of such violation. It is urged that it is usual for travelers to go upon the platform of cars and get off before the train comes to a dead stop. Let this be admitted. Passengers also take fearful risks in boarding trains in motion, but we have yet to find any adjudged case where a passenger was allowed to recover damages by reason of personal injuries received in voluntarily, and without cause, alighting from or boarding an ordinary railroad train propelled by steam, and while in motion, unless it may be by the direction of the conductor or some one in authority. In such case the passenger must be held to take the risk upon himself, and make the peril his own. Under our statute he is guilty of a misdemeanor. Chapter 148, Laws 16th General Assembly. In *Hickey v. R. R. Co.*, 14 Allen, 429, it is said: " If the injury happen while the party is occupying a place provided for the accommodation of passengers, nothing further is ordinarily necessary to show due care. But when the plaintiff's own evidence shows that he had left the place assigned for passengers, and was occupying an exposed position, he must necessarily fail unless he can also make it appear upon some ground of necessity or propriety that his being in that position was consistent with the exercise of proper care and caution on his part." Again it is said " Ordinarily no accident occurs to those who rush out of the train or into the cars at stations before the train fairly comes to a stop or after it is in motion again, but it cannot now be questioned that those who do so take upon themselves all the risks which attend such a practice." Citing *Garrett v. R. R. Co.*, 16 Gray, and *Lucas v. R. R.*

*Co.*, 6 Gray, 64; and *Sweeney v. R. R. Co.*, 10 Allen, 368. See, also, Redfield on Railways, Vol. 2, pp. 260–267 and cases cited.

It is said, however, that the plaintiff did not alight from the train while in motion, but that by the sudden starting up of the train he was jostled off by the passenger who stood behind him upon the platform. There is no claim that the engineer of the train knew that the plaintiff was in a perilous position, and after such knowledge was guilty of negligence in suddenly increasing the speed of the train. The plaintiff, whether he intended to alight from the train or not, by standing on the steps of the platform without any excuse or reasonable cause therefor did an act which he knew was in plain violation of a rule of the company, and thereby forfeited any right of recovery on the contract of insurance as expressed in the very terms of the policy.

It is true, as stated by counsel for plaintiff, that this is an unimportant case, the amount of recovery being only $135. But we cannot adopt a rule which would authorize passengers by railway to crowd the platforms of moving cars and endanger each other's lives by hanging by the railings and upon the lower steps in a rush to alight from trains approaching stations, and in boarding outgoing trains, at the risk of life and limb. As is said in *Damount v. N. O. & Carrolton Railway*, 9 Louisiana Annual, 441, if a passenger "is foolhardy enough to jump off without waiting for the train to stop, he does it at his own risk, and for this, his own gross imprudence, he can blame no one but himself." So in this case the plaintiff took the risk of standing upon the steps of the platform, and he should not be allowed compensation from any one for so plain a violation of a rule of the company, of which he was fully aware.

The jury should have been directed to return a verdict for the defendant.

REVERSED.