Summers, J.
The record does not show an exception to the giving of the special charge, so that the *384 question so ably argued is not presented by the record.
The special charge seems to have been fashioned after the ruling in Brian v. Bennett, 8 C. & P., 724, where an omnibus stopped to take on a person who had hailed it but started just as he was putting his foot on the step so that he was thrown down and injured. The court said “I think that the stopping of the omnibus implies consent to take the plaintiff as a passenger and that it is evidence to go to the jury.” It is to be observed that the facts here are materially different and that the instruction goes farther and that its correctness may be questioned.
The relation of carrier and passenger arises from contract. The passenger must expressly or impliedly have agreed to compensate the carrier to transport him and the carrier must expressly or impliedly have agreed to carry him and performance of the contract must have been commenced and the passenger be under the care of the carrier.
But, as has been said, the question is not presented in the record, and even if an exception to the charge had been noted it would not have been necessary to determine the question, for the court held that the maxim res ipsa loquitor applied, and in effect instructed the jury that there was a legal presumption that the defendant was negligent from the fact that the trolley fell and injured the plaintiff although she was not a passenger but only about to become one.
It has been held in some cases that the maxim applies only where the relation of carrier and passenger exists, but, while the presumption may arise when that relation exists from circumstances that, in the absence of such relation, would not give rise to it, *385 attention to the reason of the maxim and to decided cases as well, will show that it does not depend upon the existence of that relation.
In Cooley on Torts, 799, the learned author says: ‘ ‘ The rule applied to carriers and passengers is not a special rule to govern only their conduct, but is a general rule which may be applied wherever the circumstances impose upon one party alone the obligation of special care.”
In Judson v. Giant Powder Co., 107 Cal., 549, 555, which was a case of destruction of property by an explosion of dynamite, Garoutte, J., says: “As was well said by the court in Rose v. Stevens, etc., Co., 11 Fed. Rep., 438: ‘Undoubtedly the presumption has been more frequently applied in cases of carriers of passengers than in any other class, but there is no foundation of authority or reason for any such limitation of the rule of evidence. The presumption originates from the nature of the act, not from the nature of the relation between., the parties. ’ The carrier’s contract with his passenger is simply to exercise a certain degree of care in his transportation. It is the duty which the law enjoins upon him; and the law also enjoins the duty upon this appellant and all others, in the conduct of their business, to exercise a certain degree of care toward this respondent and all mankind. The duty which the law enjoins in the two cases only differs in the degree of care to be exercised. The principle of law involved is wholly the same; and, as has been said, the reason of the rule is not found in the nature of the relations existing between the party insuring and the party insured. The presumption arises from the inherent, nature and character of the act causing the injury. Presumption arises from the *386 doctrine of probabilities. The future is measured and weighed by the past, and presumptions are created from the experience of the past. What has happéned in the past, under the same conditions,, will probably happen in the future, and ordinary and probable results will be presumed to take place until the contrary is shown.” The maxim is thus stated by Shearman & Redfield on Negligence, (5 ed.), sec. 59: “Proof of an injury, occurring as the proximate result of an act of the defendant, which would not usually, if done with due care, have injured any one, is enough to make out a presumption of negligence. When a thing which causes the injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in 'the absence of explanation by the defendant, that the accident arose from want of care.” The following cases selected at random from a much longer list, will serve to illustrate the application of the maxim in cases where the relation between the parties was not based upon contract. Mullen v. St. John et al., 57 N. Y., 567, is one of the earliest and a leading case in this country. In that case the wall of a building fell out and a person standing on the sidewalk was injured by the bricks and mortar. It was held that the maxim applied. In Scott v. London Dock Co., 3 Hurl. & Colt., 596, an injury had been caused by the falling of bags of sugar on the plaintiff as he was passing by a warehouse. The court said: “There must be reasonable evidence of negligence. But where the thing is shown to be under the management. of defendant or his servants, and the acci *387 dent is sncli as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care.” In Richmond Ry., etc., Co. v. Hudgins, 100 Va., 409, the plaintiff’s horse took fright from the sudden stopping of an electric car and an unusual volume of smoke coming from under it. In Campbell v. Consolidated Traction Co., 201 Pa. St., 167, the plaintiff was seated in his wagon which was standing on a track of the defendant’s road in one of the streets of the city of Pittsburg. In front of him were two cars, the second car in front of him moved across the. track on an ascending grade. The trolley pole slipped from the wire and the car stopped and then slipped backward about sixty feet and struck the car back of it, and the force of the collision drove the rear car against the plaintiff’s horse and wagon, or the motorman of that car moved it backward to avoid a collision. In Uggla v. West End Street Railway Co., 160 Mass., 351, the plaintiff while driving on Park Square in Boston, was struck by a broken iron attached to a wire guy. The iron was part of an ear used to clasp a trolley wire and applied to it a strain from the guy, in order to keep the trolley wire in place around a curve and over the defendant’s track. The ear broke with the strain, and one part of it fell, striking the plaintiff on his head. In Manning v. West End Street Railway Co., 166 Mass., 230, a switch stick flew from the hands of the conductor as he was using it -on the top of an electric car and injured a person on the sidewalk in the street. The conductor was using the stick to free a trolley which had caught in the *388 frog, at the junction of some overhead wires. Similar accidents had occurred there half a dozen times before. Held, in an action for personal injuries, that there was evidence of defendant’s negligence, ■either in defective construction of the trolley wires and poles, or in the conductor’s use of the switch stick. In Thomas v. Western Union Telegraph Co., 100 Mass., 156, the hind wheels of plaintiff’s wagon became entangled with one of the defendant’s wires which was swinging across a public highway. Held, that the fact, unexplained and unaccounted for, that the wire was in such a condition, was in itself evidence for the jury on the issue of negligence of the ■defendant. In Hogan v. Manhattan Railroad Co., 149 N. Y., 23, a piece of iron fell from an elevated xailioad structure in a city street upon a person lawfully in the street. In Clarke v. Nassau Electric Railroad Co., 9 App. Div. (N. Y.), 51, the plaintiff’s horse stepped upon one of the rails of the defendant’s tracks, sprang into the air and fell down upon the track where it died in a few minutes. The plaintiff also received a shock when he seized the hames of the harness. In Jones v. Union Railway Co., 18 App. Div. (N. Y.), 267, one of the span wires that supported the trolley wires of defendant’s railroad broke and swung to the sidewalk where it struck and injured the plaintiff. In O’Flaherty v. Nassau Electric Railroad Company, 34 App. Div. (N. Y.), 74, a. trolley wire used in connection with the defendant’s railroad broke and fell to the ground, and the current shocked the plaintiff. This case is approved without report in 165 N. Y., 624.
The. plaintiff was not only lawfully in the street but she stood where she had an implied invitation from the defendant to stand and it was the duty *389 of the defendant to nse reasonable care to avoid injuring her, and the court was warranted in taking judicial notice of the fact, as it did, that such a thing as the breaking of the trolley pole and the falling of the trolley with a portion of the pole does not happen in the ordinary course of events unless there was some negligence either in its construction or in the management of it, and, this being so, the court very properly charged the jury that the plaintiff in the absence. of any evidence tending to rebut the presumption of negligence was entitled to recover for her injuries. The judgment is

Affirmed.

Pbice, Cbew and Spear, JJ concur.